*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 15-CF-1025

SEAN A. GRADY, APPELLANT,

v.

UNITED STATES, APPELLEE.

Appeal from the Superior Court of the
District of Columbia
(CF2-19000-14)

(Hon. Zoe Bush, Trial Judge)

(Argued October 4, 2017                                      Decided March 15, 2018)

*William Collins*, Public Defender Service, with whom *Samia Fam* and *Shilpa S. Satoskar*, Public Defender Service, were on the brief, for appellant.

*Nicholas P. Coleman*, Assistant United States Attorney, with whom *Channing D. Phillips*, United States Attorney at the time the brief was filed, and *Elizabeth Trosman*, *Elizabeth H. Danello*, and *Richard R. Barker*, Assistant United States Attorneys, were on the brief, for appellee.

Before BLACKBURNE-RIGSBY, *Chief Judge*, FISHER, *Associate Judge*, and NEBEKER, *Senior Judge*.

BLACKBURNE-RIGSBY, *Chief Judge*: Following a jury trial, appellant Sean Grady was convicted of carrying a pistol without a license ("CPWL") and unlawful

possession of a controlled substance (marijuana).[1]  These charges stem from a police stop in Northwest Washington, D.C., where appellant had dropped a gun in the street while speaking to a Metropolitan Police Department ("MPD") officer. Appellant sought to argue at trial that a high gun-crime rate in the neighborhood meant that the gun may have been left by someone other than appellant, and that he was just at the wrong place at the wrong time.  Appellant sought to introduce statistics on the neighborhood's gun-related crime rates through a subpoena *duces tecum* and on cross-examination, which the trial court rejected.  Appellant appeals the trial court's denial.  We affirm.

## I.  Factual and Procedural Background

### A. *The Stop*

At around 10:45 a.m. on October 27, 2014, MPD Patrol Officer Armando De los Santos was dispatched to the intersection of Euclid Street and 13th Street,

---

[1]  In violation of D.C. Code § 22-4504 (a) (2012 Repl.) and D.C. Code § 48-904.01 (d) (2012 Repl.), respectively.  Appellant was also indicted, but ultimately found not guilty, of one count of unlawful possession of a firearm by a person previously convicted of an interfamily offense, in violation of D.C. Code § 22-4503 (a)(6) (2012 Repl.); one count of possession of an unregistered firearm, in violation of D.C. Code § 7-2502.01 (a) (2012 Repl.); and one count of unlawful possession of ammunition, in violation of D.C. Code § 7-2506.01 (a) (2012 Repl.).

Northwest to investigate a reported domestic incident between a man and a woman. The man was described as wearing a black shirt and blue jeans. When Officer De los Santos arrived at the intersection, construction workers indicated that a man matching that description had walked north on 13th Street, so Officer De los Santos drove his police vehicle in that direction. From his vehicle, Officer De los Santos saw the individual, who he believed to be the suspect and later identified as appellant, walking northbound looking over his shoulder and appearing "anxious." Appellant, who was wearing a "thick coat," continued down the street and Officer De los Santos followed him in his police cruiser.[2]

Officer De los Santos attempted to speak with appellant two or three times until he responded because appellant was evading the officer. Officer De los Santos asked appellant if he had seen anything or if he had argued with anyone. Appellant, who was walking on the sidewalk parallel to the officer in his police vehicle, appeared apprehensive and responded, "no, what do you want to talk to me about?" Appellant stopped approximately halfway down the block, in between two parked cars, at which point he was standing approximately ten to fifteen feet

---

[2] In its brief, the government admits that appellant's clothing did not exactly match the description given during the broadcast, but explains that nevertheless, appellant's "anxious" behavior and continual looking back at the officer, made the officer suspicious of appellant and he decided to find out if he was involved in the reported fight.

from the officer. Appellant then backed up toward "either a large station wagon or a small SUV[,]" such that the vehicle was between him and the officer. Officer De los Santos could "see [appellant's] waist up to almost his neck . . . [t]hrough the windows of the [SUV]" and "[appellant's] head from the top of the [SUV]." Through the vehicle's windows, Officer De los Santos saw appellant put one of his hands inside a middle zippered pocket of his coat and "fumbl[e]" with something inside for about three to five seconds when the officer suddenly heard the sound of a hard or heavy object hitting the ground where appellant was standing. A second patrol officer, Martin Fosso, arrived around the same time, pulled up, and parked his police vehicle in front of Officer De los Santos's vehicle.

Officer De los Santos got out of his vehicle, went to the spot where appellant was standing, and saw a gun lying on the ground there. Officer De los Santos told Officer Fosso about the gun and Officer Fosso apprehended appellant and placed him under arrest. Officer De los Santos searched appellant incident to the arrest and found a bag of what was later determined to be about 3.33 ounces of marijuana in appellant's coat pocket.

*B. The Trial*

During the trial, appellant sought to elicit testimony regarding neighborhood gun-crime statistics from Officer De los Santos. On cross-examination, Officer De los Santos stated that he had been a patrol officer in the Third District for about seventeen years and was familiar with "Police Service Area 304" ("PSA 304"), where the gun was found. Appellant then tried to ask Officer De los Santos whether during the "last few years, there ha[d] . . . been a number of gun-related crimes reported in" PSA 304. The government objected on relevance grounds and the trial court sustained the objection and held a bench conference. At the bench, appellant argued that the number of gun-related crimes in PSA 304 was relevant to show "how a gun could possibly end up there[,]" because "there [wa]s crime that . . . [was] occurring in that vicinity with guns where individuals m[ight] be walking [and] discarding them." The trial court ultimately found that the number of gun-related crimes in PSA 304 over the course of a few years was not relevant and not sufficiently specific to show how a gun came to be at a specific location on a specific date.

During redirect examination, the government asked Officer De los Santos "how frequently" during his twenty-two years of experience he had "seen guns just

lying on the ground in the dirt or on the street." Without objection from appellant, Officer De los Santos replied that he "ha[d] never found a gun without someone calling it in." Appellant then sought to recross-examine Officer De los Santos about the prevalence of gun crime in the neighborhood, arguing that allowing the redirect "testimony without any testimony with respect to gun crimes occurring in that vicinity puts . . . [appellant] in an extreme disadvantage." Appellant further argued that the government's question about finding guns "opened the door to that kind of cross-examination" that the court had prohibited earlier. The trial court denied appellant's request, stating that appellant failed to object during questioning, and should not have assumed that the court would permit recross-examination.

Appellant then tried to inform the trial court that he had erred in failing to object to the government's question on finding guns, and he moved to strike the government's question and the witness' answer. The trial court responded that the officer's testimony was not an expert opinion but rather being offered as his personal opinion based on his knowledge and was a proper response to cross-examination about the gun. Appellant argued that if statistics on gun crimes for the past several years were not relevant to the gun's presence on the date at issue, it could not be relevant whether the officer had seen guns lying around for

the past twenty-two years. The trial court disagreed, denied the motion to strike, and ruled that the government's question was based on the officer's experience and "specific to abandoned guns lying in the street."

Officer Fosso, the arresting officer, testified on cross-examination that it was "commonplace" for him to arrive at a scene and process a firearm and that there were times when he arrived at a scene and there was "no one there being arrested[,]" because the gun had "just [been] found there." In some cases, Officer Fosso testified, he processed guns that were simply found and reported by citizens to the police but he could not remember a time where he, himself, found a gun while walking on a street.

On May 31, 2015, appellant filed a motion to reconsider the trial court's decision to preclude the proposed cross-examination of Officer De los Santos on the prevalence of gun crimes in the area of appellant's arrest during the "past several years." Appellant clarified that he now wanted to ask Officer De los Santos to confirm that there had "been a number of gun-related crimes" in the vicinity of appellant's arrest location. Appellant further argued that the gun-crime rate was not only relevant but that it was "central to [appellant's] defense" and, if precluded, would prejudice his case. The government argued that appellant's case

was not prejudiced by the preclusion of the proposed cross-examination because it was cumulative of Officer Fosso's testimony about recovering abandoned guns across the city. Appellant then invoked his Sixth Amendment right to confront Officer De los Santos.

The trial court addressed appellant's motion the following day, deciding that it would not permit appellant's additional line of questioning because, although it may be relevant, it was more prejudicial than probative. The trial court further reasoned that the questions could invite the jury to speculate that, just because there may have been a lot of gun violence in the neighborhood, that it was more likely that someone else left the gun at the location, when there was no evidence that someone else left the gun there. The jury ultimately convicted appellant and this appeal followed.

## II. Analysis

Appellant raises two claims on appeal. First, he argues that the trial court abused its discretion when it quashed appellant's two subpoenas *duces tecum* because they were overbroad. Second, appellant contends that it was a violation of the Confrontation Clause of the Sixth Amendment for the trial court to preclude

him from cross-examining and recross-examining Officer De los Santos on his knowledge of gun-crime rates in the neighborhood where appellant was arrested. These two contentions are without merit.

### A. *Subpoenas* Duces Tecum *Claim*

The morning before jury selection, appellant served a subpoena *duces tecum* on MPD Chief Cathy Lanier "and/or [the] Custodian of Records, MPD Office of Research and Analytical Services[,]" for:

> All data pertaining to reports or arrests of individuals unlawfully possessing a firearm, including but not limited to arrests for carrying a pistol without a license (CPWL), possession of an unregistered firearm, unlawful possession of a firearm and/or ammunition and felon in possession of a firearm in the MPD Third District Police Service Area (PSA 304) from 10/27/2010 to 10/27/2014.

Later that day, the government moved to quash the subpoena and, at the pretrial hearing, argued the subpoena was untimely, overbroad, and sought information that was irrelevant to appellant's own case.

Appellant argued that MPD had a "whole statistical department" that compiled crime statistics so it was their "job to do this," and thus, it could not be "burdensome" on MPD. Some statistics for crimes against people and property

were available through MPD's website but appellant sought neighborhood-specific data for CPWL and gun-possession offenses. The trial court granted the government's motion to quash the subpoena holding that the evidence sought was inadmissible and that the subpoena was too broad for MPD to comply with. The trial court reasoned that it was unclear whether MPD could even retrieve the data that appellant requested and if so, the way the subpoena was written was so overbroad that it could potentially include "every 9-1-1 call, every citizen walk-in complaint, substantiated or not, for an extended period of time, from 2010 to 2014."

The following day, appellant stated that he served a second subpoena.[3] The government moved to quash the second subpoena, offering the same arguments that it had for the first subpoena. The government acknowledged that it had not seen the contents of the second subpoena but argued that "at th[at] juncture in the . . . proceedings," the subpoena was both untimely and probably overly broad or vague, and not relevant since it, like the first subpoena, sought to support the

---

[3] Neither the second subpoena, nor its contents, are part of the record. At oral argument, appellate counsel stated that he did not know the contents of the second subpoena.

gun-crime statistics line of questioning. The trial court ultimately decided that it had "made [its] ruling on that subpoena yesterday."

On appeal, appellant argues that the trial court erred when it determined that evidence of neighborhood gun-crime was inadmissible, and when it subsequently ruled to quash appellant's subpoenas seeking MPD statistics. Appellant further argues that the trial court violated Super. Ct. Crim. R. 17, and appellant's right to admit defense evidence under the Compulsory Process Clause.[4]

---

[4] Appellant fails to make a complete argument as to how the trial court violated the Sixth Amendment's Compulsory Process Clause. We address the claim summarily. The Compulsory Process Clause "guarantees a criminal defendant a fair and meaningful opportunity to present a complete defense." *McDonald v. United States*, 904 A.2d 377, 380 (D.C. 2006) (internal citation omitted). Although this is a constitutionally protected right, it is not unlimited and it is within the trial judge's discretion to limit or exclude evidence that may be more prejudicial than probative, or that may "lead to a confusion of the issues, mislead the jury[,]" or that is cumulative of the evidence admitted at trial. *Johnson v. United States*, 960 A.2d 281, 293 (D.C. 2008) (internal quotation marks and citations omitted); *Scott v. United States*, 975 A.2d 831, 838 (D.C. 2009) (internal citations omitted); *Harris v. United States*, 834 A.2d 106, 124 (D.C. 2003) (internal citations omitted). To show that a defendant was deprived of this constitutional right, he, at a minimum, must offer an explanation for how the excluded evidence was important to his defense. *Heath v. United States*, 26 A.3d 266, 277 (D.C. 2011).

The proffered evidence would have been irrelevant and highly prejudicial, as it would have confused and distracted the jury from the relevant evidence, and was therefore, properly excluded. Further, the gun-crime statistics evidence that appellant sought to elicit would have been cumulative of Officer Fosso's

(continued . . .)

We review the trial court's denial of a subpoena request for abuse of discretion. *Featherson v. Educ. Diagnostics Inst., Inc.*, 933 A.2d 335, 338 (D.C. 2007). The trial court abuses its discretion when its "ruling on a discovery matter is based on erroneous legal reasoning or mistake of fact." *Id.* (internal citation omitted). Before obtaining a subpoena *duces tecum* for documents:

> [A] party must show (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable . . . by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production . . . and (4) that the application is made in good faith and is not intended as a 'fishing expedition.'

*Tyer v. United States*, 912 A.2d 1150, 1156 (D.C. 2006) (internal citations omitted). The government may "promptly" move to "quash or modify the subpoena if compliance would be unreasonable or oppressive." Super. Ct. Crim. R. 17 (c)(2).

We conclude that it was not an abuse of discretion for the trial judge to quash appellant's first subpoena and refuse to enforce the second one for substantially the same reasons as they sought the same information. The first subpoena, which was filed the morning of the first day of trial, requested statistics

---

(. . . continued)
testimony, which was that there had been times when he collected and processed guns that were found and reported by citizens.

of gun-related crimes in PSA 304 from 2010 to 2014, potentially encompassing an extremely large number of civilian calls and unsubstantiated claims. The trial judge noted, and the record supports the assessment, that the subpoena was confusing and likely too broad for the department to comply with. *See Turner v. United States*, 443 A.2d 542, 547 (D.C. 1982) (Appellant's subpoena, which sought all search warrants for a building during a two-year period leading up to an incident to show "that there was a significant likelihood that other 'guests' might have had the motive" to commit the crime appellant was charged with, was quashed because it was irrelevant and overbroad.). Further, when given the opportunity to make a proffer in opposition to quashing his first subpoena, appellant failed to explain how it could be more narrowly tailored. *See Wiggins v. United States*, 386 A.2d 1171, 1176 (D.C. 1978) (Ferren, J., concurring) (in seeking discovery, "[a]ppellant initially has the burden of proving that the discovery request, denied by the trial court, was 'material to the preparation of his defense and that the request (was) reasonable' (i.e., not unduly burdensome on the government)").[5]

---

[5] Appellant also argues that the trial court erred in quashing his first subpoena outright, instead of modifying it. However, appellant did not make a specific request for the court to reframe the subpoena, and instead, simply stated that appellant could "narrow it" and led the court to believe he would "be filing another subpoena [that evening]." It is not the court's statutory obligation to, *sua sponte*, modify a subpoena without appellant first moving for it to do so.

## B. Confrontation Clause Claim

Appellant's second claim is that he was prejudiced by the trial court's decision to preclude him from cross-examining and recross-examining Officer De los Santos on gun-crime rates in PSA 304. Appellant contends that the testimony he sought to elicit was highly probative and would have helped convince the jury that the gun was left by someone other than appellant.[6]

A defendant has a Sixth Amendment right to confront the witnesses against him. *Bryant v. United States*, 148 A.3d 689, 696 (D.C. 2016). But the trial court has broad discretion to institute reasonable limits on cross-examination based on concerns about, among many things, prejudice, confusion of the issues, or interrogation that is repetitive or only somewhat relevant. *Gardner v. United States*, 140 A.3d 1172, 1191 (D.C. 2016) (internal citations omitted).

The court correctly concluded that the testimony regarding gun-crime rates appellant sought was irrelevant. Nothing in the record nor anything proffered by

---

[6] In his reply brief, appellant clarifies that, in eliciting Officer De los Santos's testimony on the prevalence of gun crimes in PSA 304, he was not seeking a third-party perpetrator theory of defense. To the extent he does raise this defense, we consider it waived. *Bean v. Gutierrez*, 980 A.2d 1090, 1094 (D.C. 2009).

appellant suggests that someone other than appellant had either the motive or the opportunity to drop the handgun where appellant stopped. *See Turner, supra*, 443 A.2d at 548. Officer De los Santos saw appellant move to conceal himself behind the parked vehicle, saw his hands fumble in his pockets, and heard a heavy object hit the ground. *See id.* Both officers witnessed the gun on the ground in the exact spot that appellant was standing. *See id.* Therefore, the trial court correctly concluded that the non-probative nature of the proposed line of questioning outweighed the potential prejudicial effects of disallowing it, and there was thus an adequate basis for precluding it.

Appellant also argues that the proposed line of questioning would have minimized the incriminating effect of Officer De los Santos's testimony. We agree with the trial court's conclusion, however, that introducing the officer's isolated testimony on gun-crime statistics would provide the jury with an incomplete account of the actual likelihood that someone other than appellant left the gun at the spot where he was stopped and arrested. The trial judge stated that it "would invite the jury to speculate about whether or not, just because there's been a lot of gun violence or may have been some gun violence or some identifiable gun violence over the years in this neighborhood, that someone else left the gun." "[A] statistical showing alone, without some analysis of the particular [neighborhood]

involved, is insufficient to prove a systematic [pattern]" and would pave the way for speculation. *See Diggs v. United States*, 906 A.2d 290, 298 (D.C. 2006) (internal citation and alteration omitted). If Officer De los Santos had been permitted to testify regarding the prevalence of gun-crime rates in PSA 304, the jury, without hearing statistics of other neighborhoods as a comparison, could have idly speculated that another person left the gun, even if the rate was low, relative to other neighborhoods in Northwest or the other three quadrants of Washington, D.C. Appellant tried to show that the rate of gun crimes is tied to the frequency with which people discard guns, but he failed to introduce any evidence to support his claim. *See Giordano v. Sherwood*, 968 A.2d 494, 494-98 (D.C. 2009) ("The jury . . . may not be allowed to engage in idle speculation. Speculation is not the province of a jury, for the courts . . . have emphasized the distinction between logical deduction and mere conjecture.") (internal citations omitted).

*Affirmed.*