*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 18-CO-958

FACEBOOK, INC., APPELLANT,

V.

DARON WINT, APPELLEE,

and

UNITED STATES, INTERVENOR.

On Appeal from the Superior Court
of the District of Columbia
(CF1-7047-15)

(Hon. Juliet J. McKenna, Trial Judge)

(Argued October 9, 2018     Decided January 3, 2019)

*Joshua S. Lipshutz*, with whom *Michael Holecek*, of the bar of the State of California, *pro hac vice*, by special leave of court, *Thomas Cochrane*, of the bar of the State of California, *pro hac vice*, by special leave of court, *John K. Roche*, and *Hayley L. Berlin* were on the brief, for appellant.

*Mikel-Meredith Weidman*, Public Defender Service, with whom *Samia Fam*, *Jaclyn Frankfurt*, and *Alice Wang*, Public Defender Service, were on the brief, for appellee.

*Lauren R. Bates*, Assistant United States Attorney, with whom *Jessie K. Liu*, United States Attorney, and *Elizabeth Trosman*, Assistant United States Attorney, were on the brief, for intervenor.

Before GLICKMAN and MCLEESE, *Associate Judges*, and FARRELL, *Senior Judge.*

MCLEESE, *Associate Judge*: Appellant Facebook, Inc. filed an emergency appeal from an order holding Facebook in civil contempt for refusing to comply with subpoenas served by appellee Daron Wint. We previously issued a brief order reversing the trial court's order, and we now publish this opinion to more fully explain our ruling.

## I.

Mr. Wint was charged with murder in D.C. Superior Court. Before trial, he filed an ex parte motion asking the trial court to authorize defense counsel to serve subpoenas duces tecum on Facebook and a Facebook subsidiary for records, including the contents of communications, relating to certain accounts. Facebook objected, arguing that the Stored Communications Act (SCA), 18 U.S.C.A. §§ 2701-12 (West 2018), prohibits Facebook from disclosing such information in response to a criminal defendant's subpoena. The trial court approved the subpoena request and held Facebook in civil contempt for failing to comply.

## II.

In the trial court, Mr. Wint argued that if the SCA were interpreted to preclude Facebook from complying with the subpoenas at issue, then the SCA would be unconstitutional. Mr. Wint has not renewed that argument in this court, however, and that argument therefore is not before us. Rather, Mr. Wint has argued in this court only that the SCA is properly interpreted to permit Facebook to comply. We decide that issue of statutory interpretation de novo. *Richardson v. United States*, 927 A.2d 1137, 1138 (D.C. 2007). We first look to see whether the statutory language at issue is "plain and admits of no more than one meaning." *Peoples Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751, 753 (D.C. 1983) (en banc) (internal quotation marks omitted). We will give effect to the plain meaning of a statute "when the language is unambiguous and does not produce an absurd result." *McNeely v. United States*, 874 A.2d 371, 387 (D.C. 2005) (internal quotation marks omitted). "[W]e may also look to the legislative history to ensure that our interpretation is consistent with legislative intent." *Thomas v. Buckley*, 176 A.3d 1277, 1281 (D.C. 2017) (internal quotation marks omitted).

**A.**

The SCA broadly prohibits providers from disclosing the contents of covered communications, stating that providers "shall not knowingly divulge to any person or entity the contents" of covered communications, except as provided. 18 U.S.C.A. § 2702(a)(1). The SCA contains nine enumerated exceptions to this prohibition. 18 U.S.C.A. § 2702(b)(1)-(9). Mr. Wint does not rely on any of those exceptions, and none of them applies in the present case. The plain text of the SCA thus appears to foreclose Facebook from complying with Mr. Wint's subpoenas.

The structure of the SCA points to the same conclusion. *See generally, e.g.*, *Frey v. United States*, 137 A.3d 1000, 1004 (D.C. 2016) ("The [Supreme] Court frequently takes Congress's structural choices into consideration when interpreting statutory provisions.") (brackets and internal quotation marks omitted). Section 2702, titled "Voluntary disclosure of customer communications or records," begins with a general prohibition against disclosure and provides a number of exceptions to the general prohibition. Section 2703, titled "Required disclosure of customer communications or records," sets out provisions pursuant to which governmental entities may compel disclosure from service providers. Read together, §§ 2702 and 2703 appear to comprehensively address the circumstances in which providers may

disclose covered communications. Those circumstances do not include complying with criminal defendants' subpoenas.

Authority from other jurisdictions also favors a plain-language reading of the SCA. As far as we have determined, every court to consider the issue has concluded that the SCA's general prohibition on disclosure of the contents of covered communications applies to criminal defendants' subpoenas. *United States v. Pierce*, 785 F.3d 832, 842 (2d Cir. 2015) ("[T]he SCA provides that a governmental entity may require electronic communication service and remote computing service providers to disclose the contents of wire and electronic communication . . . . The SCA does not, on its face, permit a [criminal] defendant to obtain such information.") (brackets and internal quotation marks omitted); *State v. Bray*, 422 P.3d 250, 256 (Or. 2018) ("A person like defendant, who is a nongovernmental entity, cannot require a remote computing service . . . to divulge the contents of communications."); *Facebook, Inc. v. Superior Court*, 417 P.3d 725, 727 (Cal. 2018) (SCA declares "as a general matter [that service providers] may not disclose stored electronic communications except under specified circumstances . . . or as compelled by law enforcement entities"); *State v. Johnson*, 538 S.W.3d 32, 70 (Tenn. Crim. App. 2017) (stating that "defendants cannot obtain . . . witnesses' electronic communications directly from the social media providers" under the

SCA); *United States v. Nix*, 251 F. Supp. 3d 555, 559 (W.D.N.Y. 2017) (SCA "does not permit a defendant in a criminal case to subpoena the content of a Facebook or Instagram account"); *United States v. Wenk*, 319 F. Supp. 3d 828, 829 (E.D. Va. 2017) ("[T]he [SCA] does not contain a provision detailing the methods with which criminal defendants can *require* disclosure . . . ."). Courts have uniformly reached the same conclusion in the context of civil subpoenas on behalf of private litigants. *E.g.*, *Suzlon Energy Ltd. v. Microsoft Corp.*, 671 F.3d 726, 728 (9th Cir. 2011); *PPG Indus., Inc. v. Jiangsu Tie Mao Glass Co.*, 273 F. Supp. 3d 558, 560-61 (W.D. Penn. 2017) (collecting cases).

**B.**

The foregoing considerations provide strong support for the conclusion that, barring an applicable statutory exception, the SCA prohibits providers from disclosing covered communications in response to criminal defendants' subpoenas. Mr. Wint, however, presses an alternative interpretation of § 2702. According to that interpretation, § 2702 addresses only the circumstances in which providers may voluntarily disclose covered communications and does not address compliance with court-ordered disclosures, such as subpoenas. In support of this interpretation, Mr.

Wint relies on six principal contentions. Although some of Mr. Wint's contentions have some force, on balance we are not persuaded by Mr. Wint's argument.

**1.**

Mr. Wint argues that § 2702's seemingly unqualified general prohibition of disclosure should be read as limited to the context of voluntary disclosure, as reflected in the section's current title: "Voluntary disclosure of customer communications or records." Mr. Wint's argument on this point has several important weaknesses.

First, titles are of limited utility when weighed against plain statutory language. *Cherry v. District of Columbia*, 164 A.3d 922, 928 (D.C. 2017) ("The significance of the title of [a] statute should not be exaggerated . . . . It cannot limit the plain meaning of the text.") (brackets and internal quotation marks omitted); *see generally, e.g.*, *Bhd. of R.R. Trainmen v. Balt. & Ohio R.R. Co.*, 331 U.S. 519, 528-29 (1947) ("[H]eadings and titles are not meant to take the place of the detailed provisions of the text. Nor are they necessarily designed to be a reference guide or a synopsis. Where the text is complicated and prolific, headings and titles can do no more than indicate the provisions in a most general manner; to attempt to refer to

each specific provision would often be ungainly as well as useless. As a result, matters in the text which deviate from those falling within the general pattern are frequently unreflected in the headings and titles. Factors of this type have led to the wise rule that the title of a statute and the heading of a section cannot limit the plain meaning of the text.").

Second, § 2702's current title must be read in conjunction with § 2703's current title ("Required disclosure of customer communications or records"), as well as with the text of both sections. As explained above, those provisions and their respective titles are most naturally read together to comprehensively address the circumstances in which providers may make voluntary or required disclosures under the SCA.

Third, § 2702's current title was added in 2001, when Congress amended the SCA to allow disclosure in cases involving immediate danger of death or serious physical injury. USA PATRIOT ACT of 2001, Pub. L. No. 107-56, § 212, 115 Stat. 272, 284. The 2001 amendments otherwise did not substantially alter the scope of the SCA regarding disclosure of contents of covered communications. *Id.* Thus, if one were looking to draw inferences about § 2702's intended scope from the section's title, the section's original title would seem to be stronger evidence. That

original title was worded generally: "Disclosure of contents." Electronic Communications Privacy Act of 1986, Pub. L. No. 99-508, § 201, 100 Stat. 1848, 1860. Section 2702's original title thus undermines rather than supports Mr. Wint's contention that § 2702's broad prohibition is limited to voluntary disclosures.

**2.**

Mr. Wint points out that the exceptions in § 2702 are prefaced by the words "may divulge." 18 U.S.C.A. § 2702(b), (c). At least initially, Mr. Wint contended that "may" is a permissive term and that all of the exceptions in § 2702 therefore relate to voluntary rather than compelled disclosures. To the contrary, however, § 2702's list of exceptions includes some voluntary disclosures and some disclosures that are required by other provisions of law. *Compare, e.g.*, 18 U.S.C.A. § 2702(b)(1) (permitting disclosure to intended recipient of communication), *with, e.g.*, 18 U.S.C.A. § 2702(b)(2) (permitting disclosure pursuant to 18 U.S.C.A. § 2703, which specifies various circumstances in which providers are required to make disclosures). Mr. Wint ultimately does not appear to dispute that some of § 2702's listed exceptions require disclosure rather than simply permitting voluntary disclosure. The text of § 2702 thus undermines rather than supports Mr. Wint's argument that § 2702 should be understood as limited to voluntary disclosures.

**3.**

As Mr. Wint notes, the SCA's legislative history does not appear to contain any explicit reference to subpoenas by criminal defendants. Mr. Wint thus argues that the SCA should not be interpreted to reach such subpoenas. We are given pause by this point, because we agree with Mr. Wint that precluding criminal defendants' subpoenas to providers was a significant step and that the legislative history of the SCA thus could reasonably be expected to have mentioned the issue. As the Supreme Court explained in a different context, however, "[i]t is not the law that a statute can have no effects which are not explicitly mentioned in its legislative history, and the text of the present statute plainly embraces criteria of more general application." *Pittston Coal Grp. v. Sebben*, 488 U.S. 105, 115 (1988); *see also, e.g.*, *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1143 (2018) ("[S]ilence in the legislative history, no matter how clanging, cannot defeat the better reading of the text and statutory context.") (internal quotation marks omitted).

Moreover, the SCA's legislative history does indicate that the prohibition on disclosure was meant to be comprehensive, except as specifically provided. For example, the section-by-section analysis of the SCA in the House Report states that

"[p]roposed section 2702 provides general prohibitions on the disclosure of contents," and "[t]his provision is aimed at proscribing the disclosure of stored wire and electronic communications," with subsection (b) containing "the exceptions to this general rule." H.R. Rep. No. 99-647, at 64 (1986). Similarly, the Senate Report states that "section 2702(a) generally prohibits the provider of a wire or electronic communication service to the public from knowingly divulging the contents of any communication while in electronic storage by that service to any person other than the addressee of intended recipient," and "[s]ubsection (b) of this new section provides exceptions to the general rule of nondisclosure provided in subsection (a)." S. Rep. No. 99-541, at 37 (1986).

**4.**

Mr. Wint argues that it makes little sense as a matter of policy to interpret the SCA to prohibit providers from disclosing covered communications in response to criminal defendants' subpoenas, because criminal defendants can seek the same information from others, such as the sender or a recipient. Mr. Wint is correct that the SCA does not prohibit subpoenas directed at senders or recipients rather than providers. 18 U.S.C.A. §§ 2701-12. It does not follow, however, that the protections of the SCA lack importance. To the contrary, channeling such discovery to senders

or recipients, rather than providers, increases the chances that affected individuals can assert claims of privilege or other rights of privacy before covered communications are disclosed to criminal defendants in response to subpoenas. *Cf., e.g.*, Fed. R. Crim. P. 17(c)(3) (generally requiring prior judicial approval and notice to victim before service of subpoena to third party seeking "personal or confidential information about a victim"); 2 Charles Alan Wright et al., *Federal Practice and Procedure* § 275 (4th ed. 2018) ("The rationale for prior judicial approval is that third parties who receive subpoenas for information about victims do not have the same incentive to challenge [the subpoenas], and the victim may be unaware of the subpoena for his personal or confidential information."). A plain-language reading of the SCA therefore advances a significant interest and does not lead to irrational or absurd results. *O'Grady v. Superior Court*, 44 Cal. Rptr. 3d 72, 88 (Ct. App. 2006) ("[I]t would be far from irrational for Congress to conclude that one seeking disclosure of the contents of email, like one seeking old-fashioned written correspondence, should direct his or her effort to the parties to the communication and not to a third party who served only as a medium and neutral repository for the message.").

**5.**

As Mr. Wint notes, §§ 2702 and 2703 do not specifically refer to criminal defendants' subpoenas. Thus, Mr. Wint argues, the SCA does not speak with the clarity that is required before a provision should properly be interpreted as curtailing criminal defendants' constitutional right to use subpoenas to obtain evidence for trial.

We agree with Mr. Wint that "[t]o ensure that justice is done, it is imperative to the function of courts that compulsory process be available for the production of evidence needed either by the prosecution or by the defense," and that "exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth." *United States v. Nixon*, 418 U.S. 683, 709-10 (1974); *see also Freeman v. Seligson*, 132 U.S. App. D.C. 56, 78, 405 F.2d 1326, 1348 (1968) ("In the absence of a specific prohibition against disclosure in judicial proceedings, such as Congress set forth in some statutes, clear and strong indication is required before it may be implied that the policy of prohibition is of such force as to dominate the broad objective of doing justice."). Courts, however, have appropriately rejected the theory that general language

precluding disclosure will never suffice to preclude disclosure in response to subpoenas, and that only a specific statutory reference to subpoenas will suffice. *See, e.g.*, *Baldrige v. Shapiro*, 455 U.S. 345, 360-61 (1982) (holding that federal statute generally prohibiting disclosure of certain census data did not contain implicit exception for civil discovery); *Cazorla v. Koch Foods of Miss., LLC*, 838 F.3d 540, 551 (5th Cir. 2016) ("[I]t is unclear why a provision broadly barring *any* 'disclosure' would have to specify 'including in discovery' in order to have effect."); *In re England*, 363 U.S. App. D.C. 29, 37-38, 375 F.3d 1169, 1177-78 (2004) (holding that plain language of statute stating that proceedings of selection board "may not be disclosed to any person not a member of the board" barred disclosure in response to civil discovery; "There is no inherent ambiguity in the phrase 'may not be disclosed' that would justify departing from those plain terms pursuant to a judicially-crafted exception.").

Although the SCA does not specifically address criminal defendants' subpoenas, it does specifically and repeatedly address disclosures in response to subpoenas and other court orders. 18 U.S.C.A. § 2703(b)(1)(B), (c)(1)(A), (c)(2), (d), (e), (h)(2). Congress thus necessarily considered the issue of disclosures based on court orders, including orders during discovery, determining that disclosure was generally prohibited under the SCA but was permissible pursuant to court order in

certain specified settings. Criminal defendants' subpoenas were not included by Congress in the list of exceptions, which tends to support a conclusion that Congress did not intend to permit disclosure in response to criminal defendants' subpoenas. *See, e.g.*, *O'Grady*, 44 Cal. Rptr. 3d at 86 (declining to infer civil-subpoena exception to SCA's nondisclosure provision; "Few cases have provided a more appropriate occasion to apply the maxim *expressio unius exclusio alterius est*, under which the enumeration of things to which a statute applies is presumed to exclude things not mentioned."). *See generally United States v. Johnson*, 529 U.S. 53, 58 (2000) ("When Congress provides exceptions in a statute, it does not follow that courts have authority to create others. The proper inference, and the one we adopt here, is that Congress considered the issue of exceptions and, in the end, limited the statute to the ones set forth."). For that reason and the other reasons stated in this opinion, we conclude that the SCA speaks with sufficient clarity to the question whether providers can disclose covered communications in response to criminal defendants' subpoenas.

In support of the contrary conclusion, Mr. Wint relies heavily on *Freeman*, 132 U.S. App. D.C. 56, 405 F.2d 1326, but *Freeman* is readily distinguishable. *Freeman* involved a statutory prohibition against "publishing," not disclosure, and the court determined that permitting disclosure in response to subpoenas was

contrary neither to the language of the statutory prohibition nor to the congressional concern with "widespread dissemination" of the information at issue. 132 U.S. App. D.C. at 78-79, 405 F.2d at 1348-49.

**6.**

We finally address Mr. Wint's reliance on the doctrine of constitutional avoidance. Mr. Wint argues that criminal defendants have a constitutional right to obtain evidence for trial and that this court therefore should reject a reading of the SCA that would preclude providers from complying with criminal defendants' subpoenas. "Whether rooted directly in the Due Process Clause, or in the Compulsory Process or Confrontation [C]lauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *McDonald v. United States*, 904 A.2d 377, 380 (D.C. 2006) (ellipsis and internal quotation marks omitted). The compulsory-process right, however, is "not unlimited." *Grady v. United States*, 180 A.3d 652, 657 n.4 (D.C. 2018). In determining whether a given limitation on access to evidence impermissibly interferes with a defendant's right to present a defense, courts consider, among other things, whether the defendant "needs the evidence to conduct his defense" and whether "there are no alternative means of getting at the same

point." *Anderson v. United States*, 607 A.2d 490, 496 (D.C. 1992) (internal quotation marks omitted). We are not persuaded by Mr. Wint's reliance on the doctrine of constitutional avoidance in this case.

First, the doctrine "of constitutional avoidance is an interpretive tool, counseling that ambiguous statutory language be construed to avoid serious constitutional doubts." *Mack v. United States*, 6 A.3d 1224, 1233-34 (D.C. 2010) (internal quotation marks omitted); *see also, e.g.*, *Salinas v. United States*, 522 U.S. 52, 60 (1997) (declining to rely on doctrine of avoidance because text of statute in question was "unambiguous on the point under consideration"). Because we find the SCA to be unambiguous on the point at issue in this case, we see no basis for applying the doctrine of avoidance.

Moreover, we do not consider Mr. Wint to have established a serious constitutional doubt warranting application of the doctrine. As previously noted, Mr. Wint acknowledges that covered communications can be sought through subpoenas directed at entities other than providers, such as recipients and senders. Mr. Wint nevertheless contends that direct subpoenas to providers are the easiest method for obtaining covered communications, and that other approaches are cumbersome, time-consuming, and more likely to be ineffective. It is of course

possible that in a given case the limitations imposed by the SCA could impermissibly interfere with a criminal defendant's right to compulsory process. The SCA, however, has been in effect for more than thirty years. With the exception of the trial court's ruling in this case, we are aware of no decision that has permitted criminal defendants to subpoena providers for covered communications in the absence of an applicable statutory exception. Nevertheless, again with the exception of the trial court's ruling in this case, we have found no decision concluding that the SCA's general prohibition of disclosure pursuant to criminal defendants' subpoenas violated, or even raised a serious problem for, a criminal defendant's right to compulsory process. As to the trial court's ruling in this case, Mr. Wint has not argued in this court that he has a constitutional right to enforcement of the subpoenas at issue, and we therefore have no occasion to address that issue.

In sum, we conclude that Mr. Wint has not established the existence of a serious constitutional doubt that could warrant application of the doctrine of avoidance.